An order may be entered in accordance with this opinion. If parties fail to agree upon its terms, it may be settled by the court on two days' notice.

(27 App. Div. 186.)

## THOMPSON v. WELDE.

(Supreme ·Court, Appellate Division, First Department.   March 25, 1898.)

1. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
    Motions for a new trial on the ground of newly-discovered evidence are granted only where the evidence could not have been discovered before the trial by the exercise of reasonable diligence, and that fact is made to appear by the moving papers.

2. SAME—NEGLIGENCE OF ATTORNEY.
    If the nondiscovery of evidence until after a trial is due to the neglect, not of the defeated party, but of his attorney, the remedy is not to be sought, at the expense of the successful party, by an application for a new trial, but damages for the neglect must be recovered from the person guilty of it.

3. SAME—DELAY.
    One who desires to move for a new trial on the ground of newly-discovered evidence must do so as promptly as he can, and an unexplained and unnecessary delay for nine months is fatal to the motion.

Appeal from trial term, New York county.

Action by Adelaide Thompson, as administratrix of Henry Thompson, deceased, against Charles Welde. From an order granting a new trial on the ground of newly-discovered evidence, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Abram Kling, for appellant.
Thomas Allison, for respondent.

RUMSEY, J.   The action was brought to recover for money had and received by the defendant to the use of Henry Thompson, the plaintiff's intestate.   The sole defense was payment.   The case has been twice tried.   Before the first trial the defendant, pursuant to an order of the court, served a bill of particulars of the times of the various payments to the intestate and the amount of each.   Upon the first trial the evidence relied upon to show the payments consisted only of certain admissions of the intestate, sworn to by various witnesses.   Upon that evidence a judgment was directed in favor of the defendant, which was reversed by this court (41 N. Y. Supp. 819), for the reason that the weight to be given to the admissions, under all the circumstances, was a question of fact for the jury, and the case should have been submitted to them.   Upon the second trial other evidence was produced by

the defendant, and at the close of that trial the case was submitted to the jury, who found a verdict for the plaintiff, for a larger portion of the sum demanded in the complaint. This verdict was rendered on the 15th day of February, 1897. The motion for a new trial was made on the 14th day of December, 1897, an order to show cause having been dated on the 11th and served on that day.

Upon this trial the defendant was permitted to be a witness in his own behalf. He testified, among other things, that he paid certain sums to Thompson by his checks, drawn at various times in 1890 and 1891, and that these checks were indorsed by Thompson, and were then in the possession of defendant's attorney, who was present at the trial. Upon being asked to produce these checks, the attorney said that he did not have them, and thereupon the trial proceeded without further reference to them. There was no request on the part of the defendant that his counsel be permitted to go and get them, nor was there any suggestion of any search for them, or any reason offered why they were not present. One of the pieces of newly-discovered evidence upon which this motion is made is that the attorney, since the trial, has examined and made search for the checks, and found them, and he now has them in his possession. Even now no suggestion is made of an excuse why these checks, which the attorney had in his possession before the trial, and which he apparently found without difficulty after the trial, should not have been presented at the trial, where they were so clearly material evidence.

The defendant also testified that the larger portion of the money which Thompson gave to him he put in his safe, and that he paid it to Thompson from time to time, as Thompson sent for it. There was no suggestion upon the trial, by him, that he gave the money to anybody else to take to Thompson, except what he gave to one Quinn, who was a witness, and testified to certain payments. It appears, from the affidavits produced upon the motion, that the defendant had in his employ as a bookkeeper, until September, 1890, one Andrews, whose affidavit is produced. Andrews swears in his affidavit that between the 1st of July, 1890, and the 15th of September, 1890, the defendant handed to him the money in cash to give to Thompson, and that he personally, at the request of the defendant, paid Thompson that money, which amounted to $400. He testifies, further, that on the evening of the 15th of February, 1897, he heard of the pendency of this action, and of the verdict rendered that day, and he called the attention of Welde's son on that night to the fact of his making these payments of money. It is fair to be inferred, therefore, that the fact that Andrews could swear to these payments came to the knowledge of Welde on that night or the next day, and, if the evidence of Andrews is true, it necessarily follows that these payments were made at Welde's express request and by his direction, and that he knew of the fact of their being made at the time when Andrews made them. If that be true,—and it must be true, if Andrews' affidavit is accepted,—Welde must have known of the fact of these payments having been made, and he must have known of that fact at the time of the trial. He does not deny that he knew it, but all he says on the subject is that he discovered it since the trial, and it was out of his power, by due diligence, to

have discovered it before. But how that assertion can be reconciled with Andrews' testimony that Welde gave him the money to make the payments, and he made them under Welde's express direction, it is hard to see. Welde does not suggest that he had forgotten the fact, or anything of that kind. The only explanation of it is that, as in the case of the checks, no effort was made to procure the testimony of this witness, whose evidence, if it were true, was quite material. It is quite true that Welde says that he did not know the witness' address, but he also says that he saw him from time to time, and he carefully refrains from stating that he made any effort to ascertain his whereabouts.

Upon the affidavits presented by the defendant, there is a great lack of diligence. Motions for a new trial on the ground of newly-discovered evidence are granted only where the evidence could not have been discovered before the trial by the exercise of reasonable diligence, and that fact is made to appear by the moving papers. To permit any other rule would be manifestly unjust, because it would enable a litigant to experiment as to the amount of evidence necessary to win his case, in the hope that, if the evidence produced was not sufficient, he might be allowed another trial, in which he could introduce the evidence held back, and supply the gaps which he had permitted to exist. Because of this lack of diligence in preparation of trial, this motion should have been denied.

It is said that the fault was not that of the defendant, but that of his attorney. If the attorney for the defendant neglected his duties, the remedy is not to be sought at the expense of the plaintiff, but the defendant must recover his damages for such neglect of the person who was guilty of it.

But, passing that point, there is another fatal objection to the granting of this motion. The existence of the evidence of the checks, and the fact that they could be procured, was known to this defendant at the trial. He so testifies. The evidence of Andrews certainly came to his notice within a day or two after the trial. Yet, with the knowledge of the existence of what he calls "newly-discovered evidence," he moved for a new trial upon the minutes, and, upon that being denied, he allowed this case to stand, without taking any step whatever, until December, 1897. It is a well-settled rule that one who desires to move for a new trial upon the ground of newly-discovered evidence must do so as promptly as he can, and an unexplained and unnecessary delay is fatal to his motion. The delay here was clearly unnecessary, is entirely unexplained, and for that reason, also, the judge erred in granting this motion.

The order for a new trial should, therefore, be reversed, with costs, and the motion denied, with costs. All concur.